IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
AUG 31 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Reginald A. Jackson, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:10cv1126 (LO/JFA) |
| ) | |
| Warden, FCI Petersburg, et al., ) | |
| Respondents. ) | |

## MEMORANDUM OPINION

Reginald A. Jackson, a federal inmate, was housed in the Eastern District of Virginia when he filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his rights to due process and equal protection have been violated by the failure of respondent United States Parole Commission ("USPC" or "the Commission") to afford petitioner statutory interim parole hearings. On April 7, 2011, respondents filed a response with several supporting certified exhibits, which is legally equivalent to a motion for summary judgment, arguing that the petition should be dismissed, and petitioner filed a traverse. Petitioner subsequently moved to correct pages two and six of his traverse, and his motion will be granted. Because no notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) previously had been given, by Order dated July 12, 2011, petitioner was given the opportunity to file an amended traverse or response, and he filed a Motion for Summary Judgment with a supporting affidavit on July 28, 2011. Respondents subsequently filed a Memorandum in Opposition to plaintiff's summary judgment request. For the reasons that follow, respondents' Motion for Summary Judgment must be granted, and summary final judgment will be entered in their favor. Petitioner's Motion for Summary Judgment must be denied.

1

## I. Background

The following material facts are uncontroverted. Between 1980 and 1981, while on parole from a 30-year sentence for kidnapping a nine-year-old girl, Jackson repeatedly sexually assaulted his godchildren, a seven-year-old boy and an eight-year-old girl, over a two-year period. Resp. Ex. B. On several occasions, each child was forced to watch the sexual abuse of the other, and Jackson threatened to shoot the children if they reported the abuse. Resp. Ex. H. As a result, on August 11, 1983, Jackson was sentenced by the Superior Court of the District of Columbia to serve 72 years in prison for convictions of four counts of sodomy, five counts of taking indecent liberties with a minor child, and three counts of enticing a minor child. Resp. Ex. A.

At an initial parole hearing in December, 2001, the hearing examiner determined that Jackson's parole guidelines range was 170 to 182 months. Resp. Ex. C. After review by an executive hearing examiner, Jackson's parole guidelines were assessed at 204 - 218 months. Resp. Ex. D. On July 9, 2002, after receiving Jackson's psychological report from the Bureau of Prisons, Resp. Ex. E, a Commission examiner conducted a hearing to discuss the evaluation. At the hearing, Jackson denied any involvement in the offenses for which he was convicted, and stated instead that the prosecutor perjured himself, used witnesses that perjured themselves, and withheld exculpatory evidence. Resp. Ex. F at 1. The hearing examiner recommended that Jackson be continued to a reconsideration hearing in January, 2004, id. at 3, and the executive hearing examiner recommended that parole be denied. Id. at 4. The Commission agreed with the recommendation of the executive hearing examiner, denied Jackson parole, and continued him to a reconsideration hearing in July, 2005. Resp. Ex. G. This decision had the effect of causing Jackson to serve above his parole guideline range, and the Commission explained that its decision was based in part upon its opinion

2

that Jackson is a more serious risk for release on parole due to his failure to take responsibility for his actions. Id.

Jackson's reconsideration hearing was conducted on May 19, 2005. Resp. Ex. H. The parole guidelines were adjusted, and the hearing examiner reviewed Jackson's program participation and concluded that it did not merit an award for superior program achievement. Id. at 2. Jackson continued to proclaim his innocence of the charges, id., and the Commission decided to continue him to a reconsideration hearing in May, 2008. Resp. Ex. I.

At a reconsideration hearing on May 25, 2008, Jackson continued to declare his innocence. Resp. Ex. J. At that time he was housed in a special unit for sex offenders, but a sex offender treatment program was not expected to be available until October, 2008. Id. at 2. Although Jackson had participated in some vocational and technical courses, the hearing examiner did not believe that an award for superior program achievement was warranted. Id. The hearing examiner recommended that Jackson be granted parole on November 29, 2009, after the service of 313 months, noting Jackson's "stable institutional adjustment" and his service of 81 months above the recommended guidelines. Id. at 2. However, the executive reviewer disagreed with that recommendation, and determined that Jackson remained unsuitable for release. Id. at 3. The executive reviewer believed that Jackson could not receive significant sex offender treatment without first accepting responsibility for his crimes, and recommended that Jackson be continued to a reconsideration hearing in three years. Id. The Commission agreed with the executive reviewer and continued Jackson to a reconsideration hearing in May, 2011. Because its decision exceeded the parole guidelines, the Commission provided Jackson with the following reasons for its action:

After consideration of all factors and information presented, a

3

> decision above the Current Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score in that as was stated in previous Notices of Action, your current crimes involved multiple sex offenses upon two children coupled with your previous conviction for kidnapping another child. Notwithstanding your convictions, you continue to deny responsibility for any of your acts. The Commission believes you are in need of treatment prior to your release but your unwillingness to accept responsibility for your convicted behavior also makes you a poor candidate for meaningful treatment. For this reason, the Commission continues to believe that you are a more serious risk than your base point score indicates and that a presumptive release date at this consideration is not warranted.

Resp. Ex. K. As respondents acknowledge, Jackson as a prisoner convicted by a District of Columbia court has no further available avenues of administrative appeal to pursue, see Response at 2, n. 1; Resp. Ex. G, I, and K, so this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment,

a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Jackson asserts two grounds for relief in his petition: (1) the Commission's failure to conduct statutory interim parole hearings pursuant to 18 U.S.C. § 4208 violated his rights to due process and equal protection; and (2) the Commission's application of the 2000 D.C. parole guidelines to his case, rather than the less stringent 1987 guidelines promulgated by the D.C. Board of Parole, violated his due process and equal protection rights. For the reasons which follow, neither of these claims has merit, and respondents are entitled to the summary judgment they seek.

A. Section 4208 Does Not Apply to Petitioner

Because Jackson is a D.C. Code offender, the requirement that statutory interim parole hearings be conducted pursuant to § 4208 does not apply to him. Pursuant to the National Capital Revitalization and Self-Government Act of 1997, Pub. L. No., 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a) (the "Act"), the USPC assumed exclusive jurisdiction over D.C. Code

offenders on August 5, 1998. The Act required the USPC to follow the District of Columbia's existing parole laws and rules, but also gave it the authority to "amend and supplement" those rules and their implementing guidelines. See D.C. Code § 24-12319(a). The USPC's amended version of the D.C. Board's was published in 1998, and is codified at 28 C.F.R. § 2.80 *et seq*.

The D.C. Board's preexisting parole guidelines were adopted in 1987 pursuant to its authority "to establish rules and regulations for its procedure." Ellis v. Dist. of Columbia, 84 F.3d 1413, 1415 (D.C. Cir. 1996). Those rules were repealed on October 27, 2000. See District of Columbia Register Vol. 47, No. 43 (Friday, Oct. 27, 2000) at 8669. Since the D.C. Board's parole guidelines were part of its regulations, the Act confers authority on the USPC to revise those guidelines as it gives the USPC "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons...." See D.C. Code § 24-131(a)(1)(2001). Pursuant to that authority, in 1998 the Commission adopted an expanded version of the "total point score" or "grid score" that was contained in the D.C. Board's 1987 guidelines. See 28 C.F.R. § 2.80 (1999). Under the D.C. Code, a prisoner was assigned a "salient factor score," to which points for pre- and post-incarceration factors could be added or subtracted to arrive at a "total point score." The prisoner thereafter could earn a more favorable "total point score" by earning point deductions for positive program achievement. Ellis, 84 F.3d at 1415 - 16. Under the USPC's current revision, the prisoner's "salient factor score" is combined with the 1998 list of factors to produce a "base point score," from which the Commission calculates a "total guideline range." See 28 C.F.R. § 2.80 (2003). The "total guideline range" represents the total time a prisoner is expected to serve until, with positive program achievement, he will be found suitable for parole under the USPC's successive rehearings system.

In this case, because Jackson was convicted and sentenced by the D.C. Superior Court, his case is governed by D.C. Code § 24-401 *et seq.* See Muhammad v. Mendez, 200 F.Supp. 2d 466, 470 (M.D. Pa. 2002). Section 4208, upon which Jackson attempts to rely, requires statutory interim hearings for prisoners sentenced for violation of the United States Code who have been denied parole by the USPC. Thus, § 4208 does not apply in Jackson's case.

Under the D.C. parole statute, which does apply to Jackson, the decision whether to grant parole is left to the USPC's discretion. See D.C. Code § 24-404 (stating that a USPC "may authorize" a prisoner's release on parole when applicable criteria are met). The statute is silent on whether or when subsequent parole hearings are to be conducted. Id. Similarly, at the time Jackson committed his offenses, the regulations of the former D.C. Board of Parole provided that prisoners serving a maximum sentence of five years or more who were denied parole at their initial hearing "ordinarily" would receive a rehearing one year after the last action taken by the Board. See 9 DCRR § 103 (1982). In addition, the Board could establish a rehearing date "at any time it feels such would be proper, regardless of the length of the sentence involved or the time remaining to be served." Id., § 103.7. The schedule of rehearings thus was entirely discretionary and was not dependent on the presence of any particular set of circumstances. Due to the discretionary nature of the D.C. parole statutes and regulations, they lack the mandatory character that would give rise to an inmate's liberty interest in parole. See Greenholtz v. Neb. Penal Inmates, 442 U.S. 1, 7–8 (1979) (prisoners have no inherent liberty interest in parole); Thompson v. Veach, 510 F.3d 832 (7th Cir. 2007) (D.C. parole statute does not create liberty interest in parole release); James v. Robinson, 864 F.Supp. 275, 277 (E.D. Va.), aff'd, 45 F.3d 426 (4th Cir. 1994) (where a parole regulation requires a determination that is dependant on "unfettered discretion of public officials," no

constitutionally protected liberty interest is created). Thus, because § 4208 does not apply to Jackson and he has no liberty interest to parole under the D.C. parole statute, his claim that his right to due process has been abridged by the Commission's failure to conduct interim parole hearings is without merit.

  B. <u>Petitioner Has No Right to a Parole Determination Based on the1987 D.C. Board of Parole Guidelines</u>

  Jackson's argument that his rights to due process and equal protection were violated when the Commission applied its own guidelines rather than the 1987 D.C. Board of Parole Guidelines in determining his suitability for parole is similarly flawed. A prisoner has no due process right to have the Commission apply the 1987 D.C. Board of Parole's guidelines in his case. <u>See</u> <u>Ellis</u>, 84 F.3d at 1420 (holding that parole guidelines adopted for D.C. prisoners do not create a liberty interest). To the extent that Jackson may intend to challenge the Commission's decision to exceed the parole guidelines in his case, his argument fares no better. Both the D.C. and the USPC regulations permit guideline departures. <u>See</u> DCRR § 204.22 (1987); 28 C.F.R. § 2.80(n). The Commission's regulations allow it to exceed the guidelines where there are "unusual circumstances," which are defined as case-specific factors that are not fully taken into account by the guidelines. <u>Page v. Pearson</u>, 261 F.Supp.2d 528, 532 (E.D. Va. 2003). Here, the Commission decided that Jackson was not a suitable candidate for release notwithstanding the parole guidelines because his offense conduct involved multiple sexual assaults on two children over a two-year period, a circumstance which was not fully accounted for by the guidelines. Resp. Ex. G, I and K; <u>see</u> <u>Hawkins v. U.S. Parole Comm.</u>, 511 F.Supp. 460, 462 - 63 (E.D. Va. 1981) ("[T]he nature and chronology of an offense may be taken into account to justify a decision above the guidelines even

though the offense was counted in determination of ... the salient factor score."). Because the Commission's decision thus had a rational basis, Jackson's claim that it violated his right to due process fails. Cf. Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (the "touchstone" of due process is "protection of the individual against arbitrary action of government").

Lastly, Jackson argues that his right to equal protection was violated by the Commission's decision to continue him to another reconsideration hearing. The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors. See U.S. Const. amend. XIV, § 1. To bring an equal protection claim, a prisoner must plead sufficient facts to make a threshold showing "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Only after satisfying this threshold requirement will the Court determine whether the disparate treatment at issue was justified. Id. at 731. "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison, 239 F.3d at 654. Here, Jackson fails to specify the manner in which he believes he has been treated differently from other similarly-situated D.C. Code inmates. Therefore, the requisite threshold showing has not been made, and Jackson's equal protection claim must be rejected. See Brandon v. D.C. Board of Parole, 823 F.2d 644, 650 (D.C. Cir. 1987) (where prisoner makes no factual allegations of different treatment, equal protection claim fails).

### IV. Petitioner's Motion for Summary Judgment

As noted above, petitioner after receiving the Roseboro notice filed his own Motion for Summary Judgment and supporting affidavit. While Jackson correctly discusses the standard for

summary judgment, he has failed to bear his burden of coming forward with evidence to demonstrate the absence of a genuine issue of material fact. Cf. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Instead, Jackson asserts "facts" that are either not supported or directly contradicted by the existing record. As such, Jackson fails to establish that he is being detained in violation of the Constitution or laws of the United States, cf. 28 U.S.C. § 2241 (c)(3), so he is not entitled to summary relief on his petition for a writ of habeas corpus pursuant to § 2241. Accordingly, petitioner's Motion for Summary Judgment will be denied.

### IV. Conclusion

For the foregoing reasons, respondents' Motion for Summary Judgment will be granted, and summary final judgment will be entered in their favor. Petitioner's Motion for Summary Judgment will be denied. An appropriate Order shall issue.

Entered this 31st day of August 2011.

Alexandria, Virginia

/s/␣␣␣
Liam O'Grady
United States District Judge